FALLS LUMBER COMPANY, PLAINTIFF, *v.* HEMAN ET, DEFENDANTS.

Common Pleas Court, Summit County.

No. 210785.

EMMONS, J. This cause came on to be heard upon the issues raised by the pleadings filed herein and upon trial being duly had the Court finds: That Fred Biasella dba B and D Ceramic Tile Company and the Cantanese Excavating Company have been dismissed as parties defendants in this case;

That the Plaintiff, The Falls Lumber Company, by Attorney Robert May, claims a lien on the property of Stanley and Doris Heman for materials furnished on said property in the sum of $3,263.22 with interest at 6% from October 30, 1956 and asks for a marshaling of the liens and sale of the property;

That the Middleton Plumbing Company, by Attorney Albert Swartz, is seeking a finding in the sum of $838.79 with interest at 6% from November 6, 1956, together with foreclosure of mechanic's lien;

That William Tharp dba Bill's Sheet Metal Company, by Attorney Harry Schwab, Jr., prays for a judgment against Stanley and Doris Heman in the sum of $430.00 with interest at 6% from December 26, 1956, and a finding establishing his lien to be valid and subsisting one on the premises herein and foreclosure of lien;

That Everett Seaver dba Seaver Construction Company, by Attorney N. Syracopolus, prays that there be a finding made in his favor in the sum of $638.38 with interest at 6% from December 15, 1956, and that it may be found that he has a valid and subsisting mechanic's lien on said property for this sum and foreclosure of said lien;

That the North Akron Savings Association, by Attorney John McIntosh, prays for a judgment against the Hemans in the sum of $9,945.17 with interest at 5½% from January 1, 1958, and further seek a foreclosure of the mortgage on said property given to secure this loan;

While the Hemans have filed a cross-petition against the North Akron Savings Association for the sum of $1,500.00 attorney fees and $5,528.09 for monies they are compelled to pay out over and above the amount of the money which was at one time in the hands of the defendant Bank for purposes of constructing the Heman house.

### THE FALLS LUMBER COMPANY

Concerning the claim of the Plaintiff, The Falls Lumber Company, the Court finds that on December 21, 1956, an affidavit to obtain a mechanic's lien was filed in the Recorder's Office of Summit County, Ohio, which was within 60 days of the last delivery of materials, that within 30 days of the filing of said affidavit with the Recorder, notice was served upon the owner, the Hemans, by registered mail, informing them of the lien; that the mechanic's lien is a good and subsisting one and said lien in the sum of $3,263.22 with interest at 6% from October 30, 1956, should be allowed and impressed upon the premises described in the Plaintiff's petition and a finding made for this sum.

### SEAVERS

Concerning the claim of the defendant Seaver the sole question for the Court's determinatior is whether Seaver rendered services on the premises at 1326 DeWitt Drive under his contract with the DeWitt Construction Company on November 13, 1956.

The last charge appearing on Seaver's books was one of $202.28 made August 24, 1956, and thereafter no charge appears. Thus we have a charge of $436.10 noted as of July 30, 1956, and one of $202.28 for August 24, 1956, for a total of $638.38, the amount claimed; so it would appear that since the last work was done was August 24, 1956 and the affidavit for lien filed on December 28, 1956, more than 60 days had elapsed, however there was some work done November 13, 1956, at a time and under the circumstances that the Court could not conclude that it was done only for the purpose of filing a good and sufficient affidavit for lien purposes as it was such work that had to be fixed or done over before payment could be received.

10 Ohio Law Abs., 14—*Queen City Lumber Company* v. *Repasy*

"While it is true that the furnishing of an insignificant amount of material and labor could not be used to toll the time for filing, there is nothing in the record to show but what the furnishing on the dates claimed was of consequence and in good faith for the completion of the work."

What is more consequential than fixing or redoing a part of some of the work in order to be paid for the entire. This work done in the garage was of consequence and done in good faith and the defendant Seavers should have a good and subsisting lien on the premises described in the sum of $638.38 with interest at 6% from December 15, 1956, and a finding in this amount in his favor.

### MIDDLETON PLUMBING

Concerning the claim of Middleton Plumbing the Court finds that this work was done under an oral contract and that the last work was performed November 6, 1956, by way of testing the installation which was installed November 5, 1956, which testing is a necessary precaution and element in plumbing; that the affidavit for lien was filed January 4, 1957, and other requirements were proper and legal. The Middleton Plumbing Company should have a lien on said property in the sum of $838.79 with interest from January 4, 1957, at 6% and a finding in its favor in this sum.

### WILLIAM THARP

This contractor commenced work on the Heman property on or about June 15, 1956—that he installed a heating system in 12 houses then being built by M. W. DeWitt Construction Company and that due to a shortage of pressure regulators he was able to install only 11 of them and the Heman house was the only one without such installation. It so happens that such a regulator is required by the Building Code of Summit County. When this regulator was available the said Tharp himself went out and installed the same on December 28, 1956.

It is the Court's opinion that the said Tharp had to comply with the County Building Code and because of his inability to secure this item he was unable to complete said installation until December 28, 1956. The Hemans claim that this was corrective work but with this the Court cannot agree. It was work necessary to complete in order that there be no violation of the Building Code and therefore the lien claim is found to be a

good and valid one. Judgment should be rendered against the DeWitt Construction Company in the sum of $430.00 with interest at 6% from December 28, 1956, and that the mechanic's lien is a good and subsisting lien on the premises described in the plaintiff's petition. However, the sale of said premises to satisfy this lien and others to be held in abeyance until further order of this Court.

### NORTH AKRON SAVINGS ASSOCIATION

This part of the finding concerns only the Cross-Petition of the North Akron Savings Association hereinafter known as the Defendant Bank, as well as the Cross-Petition of the Hemans directed against said Bank. The former seeks a judgment on a mortgage note against the Hemans and foreclosure of the mortgage; the latter asks for judgment against the Bank for damages either for negligence or breach of contract in an amount representing the total of the unpaid mechanic's liens with interest at 6% and for $1,500.00 attorney fees.

Upon consideration of the issues raised by the pleadings the Court finds that the Hemans purchased a lot from the DeWitt Realty Company and entered into a contract with the DeWitt Construction Company (Mike DeWitt, President) to build a house on said lot. For this purpose the Hemans secured a loan from the Defendant Bank in the sum of $11,000.00 which sum was supplemented by an additional $5,500.00 belonging to the Hemans.

The Defendant Bank contends that this particular loan was not a construction loan but simply a conventional one made to complete a package deal between Hemans and the DeWitt Construction Company. This Court cannot agree with this theory.

Section 1311.14, Revised Code, provides in part:—

"Except as provided in this section, the lien of a mortgage given in whole or in part to improve real estate * * *, the proceeds of which are actually used in such improvement in the manner contemplated in Sections 1311.02 and 1311.03, Revised Code (which includes constructing a house) and which mortgage contains therein the correct name and address of the said mortgagee together with a covenant between the mortgagor and mortgagee authorizing the mortgagee to do all things provided

to be done under said mortgage under this section, shall be prior to all mechanics' liens * * *;"

WHAT, THEREFORE, IS A CONSTRUCTION LOAN UNDER THE LAW?

It is a loan granted by one to another either to improve real estate or pay off prior incumbrances or both and which sum is actually used for that purpose or those purposes and which mortgage contains the correct name and address of the mortgagee together with a covenant between the mortgagor and mortgagee authorizing the mortgagee to do all things provided to be done by said mortgage under the mechanic's lien law.

WHAT WAS THE NATURE OF THE MORTGAGE IN QUESTION?

Hemans purchased a vacant lot, then entered into a contract with a construction company to build a house thereon. Hemans went to the Defendant Bank and acquired a loan for this purpose and the money was so used. The name and address of the Defendant Bank were set out in the mortgage and said mortgage authorized and empowered the mortgagee to do all things provided to be done in the mechanic's lien law of Ohio and all acts amendatory or supplemental thereto to make the mortgage prior to all mechanics' liens, material men's or similar liens, and accordingly without limiting the grantee thereto, the grantee is authorized and empowered to do all things provided to be done by mortgagee under Section 8321-1, General Code (now Section 1311.14, Revised Code). What did the parties intend this loan to be?

Vaughn, an officer of the Defendant Bank testified that there was a construction loan fee charged to the Hemans' account in the sum of $111.00. Again he testified that Heman came into the Bank and filed an application for a loan for the construction of property on a certain lot. In another instance Vaughn referred to this loan as one for the construction of the property and at another time he testified that the Heman loan was a construction loan. The mortgage refers to this loan as one for construction purposes.

From all the facts and circumstances in this case the Court is of the opinion that the mortgage referred to was regarded by all parties and was in fact a construction mortgage and the

rights of the parties governed by the mechanic's lien law of Ohio.

The Hemans charge that the Defendant Bank was negligent in the distribution of the construction loan in that the Defendant Bank disbursed said trust funds without requiring compliance with the laws with reference thereto and sometimes known as Section 1311.01, et seq., Revised Code, and referred to as the Mechanic's Lien Law.

HOW WAS THE MONEY DISTRIBUTED?

There was evidence to the effect that Heman gave his written authority to the Bank for withdrawals and payments to the DeWitt Construction Company in the sums of $2,000.00 and $112.50 on May 8, 1956; the sum of $2,000.00 on August 10, 1956, the sum of $4,000.00 on August 22, 1956, while the payments of $1,000.00 on September 13, $2,500.00, $2,500.00 and $1,000.00 all on October 22, 1956, were made only by oral consent of Heman over the telephone, and the last payment of $1,300.00 was made in the presence and with the acquiescence of Heman but without his written consent.

It is the Bank's theory that Heman by giving his written consent for some payments to be made and his oral consent to others accordingly as the work on the house progressed, cannot now be heard to complain and that his action precludes him from a recovery against the Bank for its failure to conform to the Ohio Mechanic's Lien Law prior to the disbursement of funds.

Mrs. Heman testified that they went to the Defendant Bank because she knew one of the Directors of said Bank and she relied on said Bank to make the proper distribution of funds for Vaughn told Mrs. Heman that he would take care of things.

Where one undertakes to perform a certain act for another there is an implied representation that the agent will do all that is reasonably to be expected of an ordinarily cautious and careful person under similar circumstances. In other words, there is implied representation that the agent's mission will not be performed negligently.

WHAT DO WE HAVE PRESENT IN THIS CASE?

As against the inexperience of the Hemans we have the long practice of the Defendant Bank as concerns construction loans and mechanic's lien law.

2 Ohio Jurisprudence (2d), Sec. 115—

"The doctrine that the law implies an undertaking by one who enters the employ of another that he is competent to perform the work undertaken, that he is possessed of a reasonable degree of skill and will do the work with reasonable care is recognized in Ohio Law * * * Every agent, in other words, must possess a competent degree of skill to enable him to perform the duties he assumes, and if he engages without requisite skill, or is guilty of negligence whereby money of his principal is lost, he is liable for damages."

The same rule applies to gratuitous agents. See Ohio Jurisprudence (2d), Section 115. However, in this case the Defendant Bank having received a construction loan fee and having charged interest on the money loaned and having stated to the Hemans that the Defendant Bank would take care of things, is acting in the capacity of a paid agent.

Section 1311.14, Revised Code, provides in part:—

"The mortgagee is not responsible for a mistake of the owner in determining priorities or for any failure of the payee properly to distribute funds *paid on written order of the owner* * * *." (Emphasis by the court.)

Some $7,000.00 was paid out by the Defendant Bank on verbal approvals. Section 1311.14, Revised Code, concerning written orders is not ambiguous and means exactly what it says.

Vaughn admitted on the stand that the reason he didn't get lien releases was because "I have known Mike 15 years and I didn't think I needed to get lien releases. I didn't think he was playing around doing these things. I just can't believe it." Assuming that the written orders by Heman were not necessary, this Court takes the view that when the Defendant Bank called to acquire Heman's consent it impliedly represented to the Hemans that all things were done that reasonably should have been done to protect the Hemans' interest from mechanics' liens and the Hemans had the right to rely upon this premise, which they did. And if such were not done by the Defendant Bank then the Bank owed the Hemans the duty of telling them so, otherwise as in this case, the oral consent by Heman authorizing payment meant nothing insofar as protecting the Bank.

It is the opinion of the Court that the Hemans have sub-

stantiated their first claim of negligence against the Defendant Bank and that this negligence was the direct and proximate cause of the following good and subsisting valid mechanics' liens being filed against the Heman property, viz: Falls Lumber Company, $3263.22 with interest; William Tharp, $430.00 with interest; Middleton Plumbing Company, $838.79 with interest; Seavers, $638.38 with interest.

This is an example of someone relying upon the competence and honor of a person rather than on reality. The Bank became complacent in the disbursement of the money because of its prior dealings with Mike DeWitt who was the President of the DeWitt Construction Company, and when through his conduct he was unable to pay his creditors, the Defendant Bank would like to pass the responsibility back to the Hemans after this loss was occasioned only by reason of the negligence of the Bank brought about through its friendship for the President of the defaulting construction company.

Since the Court has determined the Defendant Bank guilty of negligence there is no need to make a finding on the second cause of action for breach of contract.

The Court finds that the Hemans should have a judgment against the Defendant Bank on their first cause of action in a sum representing the total sums of all mechanics' liens found by this Court to be good and subsisting, together with interest on the respective amounts at 6% from the dates set forth in the petition and the respective cross-petitions.

The claim of the Bank that they did not obtain affidavits or releases of liens because it would delay, hinder or obstruct the distribution of the payment of monies to the DeWitt Construction Company is too asinine to consider.

Concerning Hemans' third cause of action for reasonable attorney fees, the Court is of the opinion that since there was a finding by the Court based on negligence there is no provision under the law to allow attorney fees. Therefore, the third cause of action will be dismissed.

The Court will hold the matter of judgment on the Bank's note until further order of the Court.

Journal Entry to be prepared to conform to Court's finding saving exception to all parties involved.